# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | CHARLES P. KOCORAS | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 5203 | DATE | DEC 2 0 2001 |
| CASE TITLE | William Carr (#A-75014) v. Leora Harry, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion for leave to proceed in forma pauperis [3-1] is granted. As plaintiff has neither available funds nor income to pay an initial partial filing fee, the initial filing fee is waived. When funds exist, the trust fund officer at the correctional facility where plaintiff is confined shall make deductions from plaintiff's trust fund account and payments to the Clerk of Court as set forth in the attached order. The clerk shall send a copy of this order to the trust fund officer at Menard Correctional Center. This action is dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

(11) ■ [For further detail see order attached to the original minute order.]



WILLIAM CARR, #A75014,  )
)
)
Plaintiff,  )
)
vs.  )  01 C 5203
)
LEORA HARRY, et al.,  )
)
Defendants.  )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Plaintiff William Carr ("Carr"), a prisoner in the custody of the Illinois Department of Corrections (IDOC) at Menard Correctional Center, filed this pro se action under 42 U.S.C. § 1983 against a number of IDOC employees at Stateville Correctional Center, where Carr was formerly housed. The court initially denied Carr's motion for leave to proceed *in forma pauperis*, as it appeared from Carr's representations in his complaint that he had brought three prior federal suits that had been dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). When Carr did not prepay the filing fee, this action was dismissed. Carr then filed both a notice of appeal and a motion to reconsider. After obtaining court records that showed that Carr had incurred only two dismissals rather than three, this court indicated that it would grant Carr's motion to reconsider. The Court of Appeals

then dismissed Carr's appeal and this suit was reinstated. Carr is granted leave to proceed *in forma pauperis*.[1]

The thirty-two counts in Carr's lengthy complaint represent steps in Carr's narrative, rather than separate legal theories. Carr's complaint arose from an abuse of power by a correctional officer, who, becoming irritated with Carr, sent him to the disciplinary segregation unit without charging him with an offense. Carr remained in segregation for twelve days. Because his personal property was not immediately sent to the segregation unit, for two days he was without pain medication for his arthritis. Unable to get anyone to listen to his pleas that he was being improperly confined, Carr was released from segregation only by announcing a hunger strike. Thereafter, Carr had difficulty in recovering all of his personal property and met with frustration seeking redress through the institutional grievance procedure.

As the events giving rise to the complaint transpired in July 1998, this action appears to be barred by the two-year statute of limitations applicable to § 1983 actions arising in Illinois.[2] Although limitations is ordinarily an affirmative defense, the district

---

[1] As Carr has neither available funds nor income to pay an initial partial filing fee under 28 U.S.C. § 1915(b)(2), the initial filing fee is waived. 28 U.S.C. § 1915(b)(4). The trust fund officer at the correctional facility where Carr is confined shall collect monthly payments from Carr's trust fund account in an amount equal to 20% of the preceding month's income credited to the account and forward monthly payments, identifying Carr's name and the case number of this action, to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, IL 60604, attn: Fiscal Dept., each time the amount in the account exceeds $10 until the full $150 filing fee is paid.

[2] While § 1983 does not contain an express statute of limitations, a federal court must adopt the forum state's limitations period for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The limitations period for § 1983 actions arising in Illinois is two years as set forth in 735 ILCS § 5/13-202. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001).

court may address the timeliness of the complaint on its own motion if it appears the plaintiff has pleaded himself out of court. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir. 1994). Nevertheless, the Seventh Circuit has recently held that the limitations period is tolled while a prisoner exhausts administrative remedies as required by 42 U.S.C. § 1997e(a). *Johnson v. Rivera*, No. 99-2093, — F.3d —, 2001 WL 1512936 (7th Cir. Nov. 29, 2001). Carr alleges that certain defendants conspired to obstruct his pursuit of administrative remedies, so the timeliness of the complaint may turn on disputed issues of fact. Accordingly, we do not consider the timeliness of the complaint and instead address the complaint on its merits.

## LEGAL STANDARD

A district court is required to review complaints filed by prisoners against governmental entities or their officers or employees and dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A. In determining whether the complaint states a claim upon which relief may be granted, the court applies the standard employed in deciding a motion to dismiss under Rule 12(b)(6), taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

**Count I**

On July 16, 1998, Carr was following a line of inmates to go to the law library and stopped to ask Correctional Officer B. Neal whether she remembered packing Carr's personal property on June 18, 1998, when Carr was taken to disciplinary segregation. After failing to obtain information from Neal, Carr ran to catch up to the line.

Defendant Lieutenant S. Lohiser ("Lohiser") was controlling the gate, and after observing Carr talking with Neal, refused to let Carr proceed with the other inmates to the law library. Lohiser radioed defendant Lieutenant Foster that a "refusal" was being returned to the cellhouse. Carr claims that this interference with his movement constituted "corporal punishment" in violation of prison rules. He infers that Lohiser intended to punish him for speaking with Neal, in violation of his right to freedom of expression.

A prisoner may not sue in federal court for violations of prison rules that do not amount to a constitutional violation. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of liberty without due process of law. A prisoner lawfully in custody has no right to liberty but may nevertheless have protected liberty interests created by the Due Process Clause or state law. The Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), sharply limited the cases in which state laws or regulations will give rise to a liberty interest protected by the Due Process Clause and enforceable in federal courts. The Court disavowed the practice of finding that prison officials' noncompliance with state law or prison regulations deprived inmates of liberty interests, pointing out that prison regulations were not intended to confer rights on inmates. To make prison regulations enforceable by inmates in federal court discourages the state from enacting regulations to limit the discretion of correctional officers and "[leads] to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.* at 482. Although the state may create protected liberty interests, they are "generally limited to freedom from restraint which ... imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Accordingly, although IDOC regulations prohibit "corporal punishment and disciplinary restrictions on diet, medical or sanitary facilities, mail, or access to legal materials," 20 Ill. Admin. Code § 504.20(c), Lohiser's turning Carr away from the law library does not give rise to a federal claim. Being turned back from the law library is hardly an atypical and significant hardship in relation to the ordinary incidents of prison life. Carr does not allege that this incident prevented him from presenting a legal claim to a court, so his constitutional right of access to the courts was not infringed. *Lewis v. Casey*, 518 U.S. 343, 349-53 (1996); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998).

**Count II**

As Carr was being escorted by Lohiser back to his cellhouse, Carr saw defendant Captain Griffin, Lohiser's superior. Lohiser told Carr that if he spoke to Griffin, Lohiser would take him to segregation. Carr called out to Griffin anyway and complained that Lohiser had kept him from going to the law library. Griffin was indifferent and refused to listen to Carr's complaint. This does not give rise a claim against Griffin; if Lohiser's conduct did not violate the Constitution, neither did Griffin's indifference to it.

A prison official may not punish a prisoner for exercising his First Amendment right to present grievances to prison supervisors or to the courts, even if the punishment would otherwise raise no constitutional concerns. *Zimmerman*, 226 F.3d at 573. Nevertheless, Lohiser's ordering Carr not to speak to Griffin raises no First Amendment claim. Lohiser did not threaten to punish Carr for complaining through proper channels but only ordered him not to bother Griffin at that particular moment. Maximum-

security prisons are necessarily tightly disciplined places, and the right to seek redress of grievances is not the right to make a nuisance of oneself if one feels wronged. Even in the outside world, the right of free speech is limited by reasonable restrictions on time, place and manner. The First Amendment right to seek redress does not afford prisoners the right to challenge a disputed order up the chain of command before obeying it. Lohiser's insistence on obedience was not retaliation.

**Count III**

After Carr disobeyed his order not to speak to Griffin, Lohiser escorted Carr to the segregation unit, "placing the stigma of guilt on plaintiff in the eyes of Stateville staff, a Mrs. Gereldine Rucker from Joliet C.C. also in Joliet, Illinois, and the inmates looking out the inmate dining room windows as he and Lohiser passed by." Carr complains that because Lohiser did not write a disciplinary report charging Carr with an offense, Carr was not given a hearing to clear himself of any charges.

This is frivolous. Defamation is not a deprivation of liberty within the meaning of the due process clause. *Paul v. Davis*, 424 U.S. 693 (1976); *Hernandez v. Joliet Police Department*, 197 F.3d 256, 262 (7th Cir. 1999). In any event, Carr has been convicted of multiple murders and could hardly have been stigmatized by Lohiser's treating him as having violated a disciplinary rule.

**Count IV**

Carr complains that an unnamed reviewing officer should have reported to the warden that no disciplinary report had been written against Carr within three days of his being sent to segregation. The officer's neglect of duty infringed no legally protected interest of Carr's.

### Counts V-VII

After Lohiser delivered Carr to the "bull pen" in the segregation unit, Carr asked several officers to contact supervisory personnel so that Carr could protest his improper confinement. They refused to do so, and Carr spent twelve days in segregation.

Carr has no claim against any of the defendants with respect to his confinement in disciplinary segregation. The Supreme Court held that because conditions in disciplinary segregation were not significantly different from those in nonpunitive administrative segregation or protective custody, the respondent's thirty-day term in segregation "did not work a major disruption in his environment," *Sandin*, 515 U.S. at 486, and due process of law was not required. After *Sandin*, unless prison discipline amounts to an atypical and significant hardship, it can be imposed fairly or unfairly, with or without due process of law, as far as the Constitution is concerned. Even though state law or regulations may grant prisoners certain procedural rights, they do not create liberty interests enforceable in federal court.

Following *Sandin*, the Seventh Circuit held in *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995), that conditions in segregation at Stateville do not constitute an atypical and significant hardship, and in *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997), that seventy days in segregation at Stateville did not implicate any protected liberty interest. Because it is established that a prisoner can be transferred without due process protections to another institution where conditions are harsher and more restrictive, *Meachum v. Fano,* 427 U.S. 215, (1976), the Seventh Circuit observed in *Wagner v. Hanks*, 128 F.3d 1173, 1175-76 (7th Cir. 1997), that

> [w]hen *Sandin* is interpreted in light of the transfer cases, it becomes apparent that the right to litigate disciplinary confinements has become

vanishingly small. . . . [W]hen the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty.

Carr's arbitrary placement in segregation may have offended his sense of fairness, but it does not offend the Constitution.

**Count VIII**

Carr complains that when he was sent to segregation his property was packed in his absence in violation of prison rules. During the twelve days in segregation he did not have a change of underwear or deodorant and was denied unspecified items other segregation prisoners were allowed to have for entertainment.

Carr had no constitutional right to observe the packing of his property. While the denial of clean clothes over an extended period could implicate the Eighth Amendment, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). These deprivations for a limited time do not rise to the level of cruel and unusual punishment.

**Counts IX-XI**

Carr alleges that early in the morning of July 17, 1998, he awoke with arthritis pain in his left hip. He had been prescribed medication for arthritis pain, but his

medication was with his personal property and was not brought to the segregation unit. Three times Carr asked defendant officer Tyree to send for a medical technician. Tyree said he would, but no one appeared. Later that morning a nurse, defendant Jan Leigh, was passing out prescribed medications, but she ignored Carr's calls for help. Carr took off his shoe and began beating it on the metal panel outside his door. Defendant Lieutenant Price responded to the racket but apparently did not send Leigh to Carr, because she left without seeing him. Carr made no further attempts to seek medical attention through the rest of the 7 a.m. to 3 p.m. shift, and made no attempts during the 3-11 shift Friday evening, because, he alleges, previous experience had taught him that the medical technician on that shift, Allen Dantzler, would do nothing for him.

On Saturday morning, Carr asked defendant Harris to contact a medical technician to confirm that medication had been prescribed for him and have some sent from the pharmacy. Harris said she would send a medical technician but did not do so. About 7:58 p.m. Saturday evening Carr saw Dantzler on the gallery and called out to Sergeant Gross. Carr explained to Gross that he needed medication and had some in his personal property, but his personal property hadn't arrived yet. Gross brought Dantzler over to Carr's cell. Dantzler said he was only passing out prescribed medication and would not get Carr's medication for him but suggested that it might be retrieved from personal property. Correctional officer Anyaso took it upon himself to locate Carr's personal property and found it had not been taken from the cellhouse where Carr had been assigned before being taken to segregation. Anyaso retrieved Carr's pain medication and he received it about 10 p.m. Saturday.

Deliberate indifference to prisoners' serious medical needs constitutes unnecessary and wanton infliction of pain in violation of the Eighth Amendment's

prohibition of cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson,* 502 U.S. at 9. An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn, supra* (internal quotations omitted).

Not every refusal of medical treatment constitutes cruel and unusual punishment. The Seventh Circuit has recognized that

> Medical "need" runs the gamut from a need for an immediate intervention to save the patient's life to the desire for medical treatment of trivial discomforts and cosmetic imperfections that most people ignore. At the top of the range a deliberate refusal to treat is an obvious violation of the Eighth Amendment [citations], and at the bottom of the range a deliberate refusal to treat is obviously not a violation. [Citations] Where to draw the line between the end points is a question of judgment that does not lend itself to mechanical resolution.

*Ralston v. McGovern,* 167 F.3d 1160, 1161-62 (7th Cir. 1999). Severe pain alone can amount to a "serious medical need" such that refusal of pain medication violates the Eighth Amendment. *Id.*; *Cooper v. Casey,* 97 F.3d 914, 917 (7th Cir. 1996). The plaintiff in *Ralston* had been prescribed medication to control pain caused by radiation therapy for cancer. The treatment caused sores in his mouth and throat, making it painful to swallow, but the defendant refused to let the plaintiff have his medication.

- 10 -

The Seventh Circuit held that this "gratuitous cruelty" violated the Eighth Amendment. 167 F.3d at 162.

Carr had been prescribed pain medication, indicating that his condition had been recognized as objectively serious. On the other hand, Carr's admission that he did not seek treatment for an entire shift because he thought that the medical technician on that shift would do nothing for him argues against the objective seriousness of his condition; it is unlikely that someone in serious pain could endure it for the length of time Carr opted not to ask for assistance because he did not think it would be forthcoming from the medical technician on duty.

Be that as it may, an Eighth Amendment claim requires not only that Carr's medical need have been objectively serious. It requires deliberate indifference to his condition, which entails two things: (1) a "knowledge element," i.e., the defendants must have actually known that Carr's pain was objectively serious; and (2) a "response element," either inaction or "woefully inadequate action" under the circumstances. *Hudson v. McHugh,* 148 F.3d 859, 863 (7th Cir. 1998). As the Seventh Circuit recognized, seriousness and the perception of seriousness lie on a continuum, as does the immediacy of the response required. Arthritis pain, while it should not be left untreated, is not a medical emergency; to the layperson it suggests discomfort rather than agony. Carr told correctional officers that he had the necessary medication in his personal property, but it had not been delivered to the segregation unit; it would have been reasonable to wait a reasonable time for Carr's medication to arrive rather than obtain a fresh supply.

Between the time Carr awoke in pain early Friday morning and approximately 8 p.m. Saturday, when officer Anyaso left to locate Carr's medication, Carr was

- 11 -

neglected for perhaps forty hours, including one eight-hour shift in which he made no attempt to seek help. While Carr should have received his medication sooner, defendants' response was not "woefully inadequate." The neglect Carr alleges did not amount to wanton infliction of pain in violation of the Eighth Amendment.

**Counts XII-XIII**

Earlier that Saturday, a hot July day, defendant Harris had been passing out ice to the segregation inmates, but Carr had no container to hold ice. Harris did not get Carr a container for ice. Carr also complains that on Saturday he was unable to use his depilatory to shave because he hadn't received his personal property, and he couldn't shave with a razor because it irritates his skin. As a result he had to cope with "chronic itching from newly grown facial hair." The following Wednesday, Carr could not shower because he did not have shower shoes to protect him from acquiring a fungus infection or from slipping and falling on the wet floor. These minor, temporary incidents of discomfort do not amount to cruel and unusual punishment.

**Counts XIV-XV**

Carr alleges that he passed a note to defendant DelPriore, a casework supervisor, complaining that Lohiser had taken him to segregation in retaliation for complaining to Griffin that Lohiser had deprived him of his law library time, and that the following day Carr made the same complaint to an unnamed correctional counselor. Neither did anything about it. But as Carr's confinement in segregation was not a constitutional violation, their failure to remedy it–assuming it was within their power to do so–did not violate the Constitution, either.

## Counts XVI-XVIII

On July 24, 1998, Carr announced a hunger strike to protest his continuing confinement in segregation, which continued until he was released on July 28. He complains that he was not released and that procedures for dealing with hunger strikers were not followed so as to bring his hunger strike to the attention of medical personnel and the prison administration. It is unclear what claim Carr is attempting to raise. As his confinement was not in violation of the Constitution, he has no federal claim against those who, for whatever reason, did not act to release him from segregation. Since Carr does not allege that his hunger strike put him in serious danger, there is no issue of medical neglect, and Carr does not complain that he was not force-fed. He does complain that he was not released, but his refusal to eat did not affect his right to be released from segregation one way or the other.

Carr was eventually released when the superintendent of the segregation unit, B. Smith, and Captain Manning learned of his hunger strike. Carr complains that while Smith and Manning pretended to be surprised at his illegal detention, they took no action against their subordinates for failing to inform them of it.

Carr's repeated allegations that supervisory personnel failed to discipline their subordinates for violations of IDOC regulations do not state a claim. Apart from the fact that the subordinates' actions did not violate Carr's constitutional rights, failure to investigate or discipline a subordinate will not normally support a claim against the superior, since failure to discipline a subordinate after the fact cannot have caused the plaintiff's injury. *See Vukadinovich v. McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990); *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989). A private citizen has no legal interest in the criminal prosecution of another for a breach of a duty owed to

society, *Leeke v. Timmerman*, 454 U.S. 83 (1981); *Johnson v. City of Evanston*, 250 F.3d 560, 563 (7th Cir. 2001), and, by extension, a citizen has no right to have a state employee disciplined for misconduct.

**Counts IX-XXI**

The foregoing principles also bar these counts. Carr alleges that while he was in segregation he did not receive permitted items of personal property that were supposed to be sent to him and that when he was released from segregation, much of his personal property was missing, only to turn up later. Carr states that he is "making no property claim in this matter as he subsequently received most of, but not all of it, back on two separate occasions." Carr's claim seems to be that defendants conspired to avoid responsibility for taking, losing or mislaying his property, and forged his signature on receipts to show that he received property when he had not. Again, whether this misconduct is viewed as criminal or merely a violation of IDOC procedures, Carr has no right to have the defendants disciplined for it. Carr does not allege any damages as a result of the loss or detention of his property. Unless the unauthorized loss or detention of his property resulted in some other constitutional deprivation, Carr has no claim in federal court, as he has an adequate state-law remedy. *Murdock v. Washington*, 193 F.3d 510, 512-13 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993).

**Counts XXII-XXXII**

These counts allege, in extreme detail, Carr's attempts to utilize and exhaust his administrative remedies through IDOC's prescribed grievance procedure. These allegations do not state a claim for the simple reason that there is no constitutional right to a grievance procedure. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996).

While persons acting under color of state law may not deprive inmates of rights guaranteed by the Constitution, the state is not required to provide an internal procedure to redress such deprivations, and the failure of state officials to follow procedures prescribed by state law and regulations is not a separate infringement of Carr's constitutional rights.

Carr's allegations that defendants conspired and falsified documents in order to obstruct and delay his exhaustion of administrative remedies would be relevant in the event that defendants sought to bar another, substantive, claim on the ground that Carr had not exhausted available administrative remedies. Because Carr has not alleged a substantive claim it is unnecessary to consider these allegations further.

## CONCLUSION

Taking Carr's allegations as true, it appears that IDOC rules were violated or ignored and Carr suffered injustice and discomfort as a result. Nevertheless, Carr has a claim in federal court only if his treatment violated the Constitution, and the court finds it did not. This suit is dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A.

_____
Charles P. Kocoras
United States District Judge

Dated: December 20, 2001